UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CRYSTAL LAUINA, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.:  15cr1932 BTM<br><br>**ORDER** |

　　　　Defendants Ashley Liufau, Crystal Lauina, and Samantha Poutoa (collectively "Defendants") were arrested at the San Ysidro Port of Entry ("SYPOE") on Thursday, June 4, 2015, at approximately 5:15 p.m. Defendants spent Thursday night at the SYPOE and were transported to the Metropolitan Correctional Center in San Diego on Friday. Although they were arrested on a Thursday, Defendants were not presented before a Magistrate Judge until the following Monday. On October 30, 2015, Defendant Ashley Liufau filed a motion to dismiss the indictment and issue a writ of prohibition because of this delay. (ECF No. 30.) Defendants Crystal Lauina and Samantha Poutoa subsequently joined the motion. (See ECF Nos. 39, 40.)

　　　　Delay in presentment is not a novel issue in this district. See, e.g., United States v. Minero—Rojas, No. 11-CR-3252-BTM, 2011 WL 5295220 (S.D. Cal.

Nov. 3, 2011). In Minero-Rojas, the Court detailed the presentment procedures and addressed issues that, in 2011, were causing delays in initial appearances before Magistrate Judges of between two and four days. As discussed in more detail below, the parties in this case submitted supplemental briefing to describe the current state of delays. While delays are not currently as long as in the days before Minero-Rojas, certain detainees are still not presented on either the day of their arrest or the day following their arrest.

Because delays persist, the Court finds it necessary to revisit the current presentment procedures.

## I.

Rule 5 of the Federal Rules of Criminal Procedure states that, "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a Magistrate Judge . . . ." Fed. R. Crim. P. 5(a)(1)(A). In 2009, the Supreme Court noted the importance of Rule 5's presentment requirement, stating:

> Today presentment is the point at which the judge is required to take several key steps to foreclose Government overreaching: informing the defendant of the charges against him, his right to remain silent, his right to counsel, the availability of bail, and any right to a preliminary hearing; giving the defendant a chance to consult with counsel; and deciding between detention or release.

Corley v. United States, 556 U.S. 303, 320 (2009) (citing Fed. R. Crim. P. 5(d)).

In this district, rather than transporting detainees directly to a Magistrate Judge, arresting agents take detainees to the Metropolitan Correctional Center ("MCC") for initial processing. See generally Minero-Rojas, 2011 WL 5295220, at

*2.[1] At the MCC, detainees are screened for health issues, including pulmonary tuberculosis ("TB"), and gang affiliations. The detainees are then provided with access to counsel and Pretrial Services, and organized before being taken before the Magistrate Judge by the U.S. Marshal. Because the Court sits in such a busy district, the MCC provides the necessary function of organizing detainees prior to their initial appearance. Id. Access to Pretrial Services prior to arraignment also provides for a more meaningful hearing on the issue of conditions of release. Id. For these reasons, bringing detainees directly to the Court would likely be disorganized, cause unsafe conditions, and be an inefficient use of the Court's time.

To start the booking process, arresting officials must call the MCC to request a booking window. The MCC maintains three booking windows each day at approximately 9:00 a.m., 12:30 p.m., and 5:00 p.m. When persons are detained at the border, the arresting officials call ahead to reserve a booking window before transporting the detainees to the MCC. Persons detained after the last booking window typically spend the night in a cell at the SYPOE.

As noted above, detainees are also screened for TB at the MCC. Tuberculosis is a problem with detainees in this district. In 2010, the MCC reported the highest incidence rate of TB for all facilities in the Bureau of Prisons. In response, the Court issued General Order 605 to "ensure the safety of the MCC staff, the inmates, and the community."[2] Pursuant to Order 605, "[t]he Department of Justice . . . shall insure that every detainee being brought before the Court has been screened for and determined not to have transmittable

---

[1] The Court held a hearing on this motion, where the Government's witnesses recounted the current procedures. Many of the procedures mentioned in Minero-Rojas remain the current practice.

[2] General Order 605, issued on January 18, 2012, may be viewed at https://www.casd.uscourts.gov/Rules/GeneralOrders/SitePages/Home.aspx

tuberculosis." Order 605 goes on to caution that, "[s]uch screening shall be completed expeditiously and to avoid unnecessary delay in the detainee's appearance before the Court as required by Federal Rule of Criminal Procedure 5."

The Bureau of Prisons originally required only a skin test to detect TB. However, the MCC also administers chest x-rays to expeditiously and more effectively diagnose detainees. These x-rays need to be read by a radiologist. The MCC's procedures prior to Order 605 were insufficient to screen inmates without unnecessary delay. Because Order 605 mandated that the screening comply with Rule 5, the MCC altered its practices to avoid the delays that had become the norm in this district.

To ensure the x-rays are read expeditiously, the MCC presently contracts with Digital Imaging Acquisition Networking Associates ("DIANAssociates") in Maryland. X-rays are digitally transmitted from the MCC to DIANAssociates, where radiologists read the x-rays and report the results back to the MCC. X-rays received in the morning—from inmates booked at the 9:00 a.m. window—are read so that the detainees can be brought to court by 2:00 p.m., whereas results from x-rays received in the afternoon—from inmates booked during the 12:30 p.m. or 5:00 p.m. windows—are typically not returned until the following day.

As the Court noted in Minero-Rojas, "[t]he practice of using the MCC for a conduit to bring the arrestees before a Magistrate Judge works only if there can be compliance with Rule 5." 2011 WL 5295220, at *5. Furthermore, the Court stated that, "[i]f the MCC cannot accommodate [detainees], alternatives must be obtained that will result in compliance with Rule 5 . . . ." Id. Because of the administrative procedures and TB screening process, if a detainee misses the 9:00 a.m. window they likely won't be presented before a Magistrate Judge that day. If this occurs on a Friday, the detainee will spend the weekend in the MCC before presentment. And if this occurs on a Friday before a three-day weekend,

1  the detainee will not be brought to Court for three to four days from arrest.

2  In this case, Defendants submitted supplemental filings that included a list
3  of detainees who were not presented to the court on either the day of or the day
4  following their arrest. (See ECF Nos. 53, 73, 78.) In short, the record
5  demonstrates that, for whatever reasons, a significant number of individuals face
6  delays in presentment.

7  With this backdrop, the Court addresses the specific instance of delay in
8  this case.

9

10                                             **II.**

11  Defendants were detained at the border on a Thursday at 5:15 p.m. when
12  methamphetamine was found on their persons. Defendants spent Thursday night
13  in a cell at the SYPOE and were brought to the MCC on Friday in time for the
14  12:30 p.m. window. Defendants were not presented before a Magistrate Judge
15  on Friday, spent the weekend at the MCC, and were presented the following
16  Monday.

17  On December 21 and 22, 2015, the Court heard testimony from Officer Eric
18  Neddermeyer of the United States Customs and Border Protection, and Agent
19  Maria Najera, a Supervisory Special Agent with Homeland Security
20  Investigations ("HSI"). Officer Neddermeyer testified regarding the conditions of
21  confinement at the SYPOE, and Agent Najera testified regarding the reasons for
22  delaying Defendants' transportation to the MCC until Friday at 12:30 p.m.

23  **A.   Officer Neddermeyer's Testimony**

24  According to Officer Neddermeyer, the Defendants were held in short-term
25  detention cells common at the SYPOE. Each cell contains 1-2 toilets, separated
26  from the general area by slight partitions. The lights are kept on in the cells so
27  that officers can clearly see the detainees at all times. This same reasoning
28  applies to the slight partitions around the toilet areas. Sleeping mats and blankets

are provided for detainees spending the night, but during particularly busy times there likely aren't enough to accommodate every inmate.

Detainees are provided with three meals a day: breakfast at 6 a.m., lunch at noon, and dinner at 6 p.m. Breakfast typically consists of a breakfast burrito, lunch includes a sandwich, and dinner is often a hamburger. Toothbrushes are provided upon request, and showers are made available for persons detained more than 24 hours. Hand sanitizer is available when detainees are moved from the detention area for their meals. Notably, the SYPOE does not keep any records of complaints regarding the conditions of the holding cells or access to hygiene supplies.

**B.    Agent Najera's Testimony**

Agent Najera was in charge of the group called by Customs and Border Protection to process the Defendants in this case. Because the Defendants were arrested at 5:15 p.m., they could not be processed and transported in time to make the 5:30 p.m. booking window on Thursday night.

According to Agent Najera, her HSI group was responsible not only for processing the Defendants at the border, but also for transporting the Defendants to the MCC. Typically, officials at the border contract with a third party to transport detainees to the MCC. However, at the time in question, the previous contract had expired and a new contract had not yet been issued, and the transportation duties fell on Agent Najera's group.

Agent Najera's group responded to an unusually high number of cases on the night of the Defendants' arrest. When the group finished processing the cases early on Friday morning, Agent Najera told her group to request the 12:30 p.m. booking window instead of the earlier 9:00 a.m. booking window so that her agents could rest before transporting the Defendants. Agent Najera stated that she believed her agents could not safely transport the Defendants to the MCC for the earlier window.

The Defendants were transported to the MCC for the 12:30 p.m. window and subsequently processed. The Defendants spent the weekend at the MCC because the Defendants were not cleared for TB in time to make a Friday Magistrate Judge calendar. Their x-rays were taken in the afternoon and weren't read until the following day. The Defendants were presented before a Magistrate Judge the following Monday.

Agent Najera stated that, had she known there would be consequences for delaying the transportation of the Defendants to the MCC, she would have called for additional personnel to ensure that the Defendants made it to the MCC for the morning booking window. Thus, the agents could have safely transported the Defendants to the MCC to be booked and presented before a Magistrate Judge within twenty-four hours of arrest.

### III.

Defendants move to dismiss the indictment and issue a writ of prohibition on the grounds that the conditions at the SYPOE and the delay in presentment violate Rule 5 and the Defendants' due process rights. Moreover, Defendants argue that dismissal of the indictment in this case is proper as an exercise of the Court's supervisory powers, as it would deter law enforcement in the future from making decisions regarding the transportation and detention of arrested persons that could delay their presentment.

**A.  Rule 5**

Defendants first argue that the delay in this case was unnecessary and in violation of Rule 5 of the Federal Rules of Criminal Procedure. Rule 5 provides that "[a] person making an arrest within the United States must take the defendant without *unnecessary delay* before a Magistrate judge." Fed. R. Crim. P. 5(a)(1)(A) (emphasis added). Unnecessary delay "must be determined in the light of all the facts and circumstances of the case." Fed. R. Crim. P. 5 advisory

committee's notes.

In <u>United States v. Pimental</u>, 755 F.3d 1095 (9th Cir. 2014), the Ninth Circuit confronted a similar delay in presentment from this district. The defendant in <u>Pimental</u> was arrested on a Friday morning at the San Ysidro Port of Entry, but not presented before a Magistrate Judge until the following Tuesday. <u>Id.</u> at 1098-99. After the district court denied the defendant's motion to suppress the defendant's statements, the Ninth Circuit reversed, ultimately holding that the delay was unnecessary. <u>Id.</u> at 1103. The Ninth Circuit noted that "there was ample time between 10:00 a.m. [Friday] and the conclusion of the Magistrate Judge's calendar to conduct the interview, prepare a complaint, and transport [the defendant] to the courthouse seventeen miles away." <u>Id.</u>

Just as in <u>Pimental</u>, the delay in this case was unnecessary. Although Defendants were arrested after the last booking window on Thursday, they were successfully processed by the agents at the border in time for the 9:00 a.m. booking window on Friday morning. Had Agent Najera requested additional agents to transport Defendants to the MCC for the 9:00 a.m. booking window, the Defendants would have been transported the seventeen miles from the border to the MCC, screened and processed, and presented before a Magistrate Judge on Friday.

However, even though the delay was unnecessary, dismissal of the indictment is an improper remedy. In <u>McNabb v. United States</u>, 318 U.S. 332 (1943), and <u>Mallory v. United States</u>, 354 U.S. 449 (1957), the Supreme Court recognized suppression of evidence as a remedy for unnecessary delays in presentment. If the delay in presentment is unreasonable or unnecessary, the <u>McNabb-Mallory</u> rule, limited by 18 U.S.C. § 3501(c), makes inadmissible any confession made before presentment and beyond six hours following an arrest. <u>Corley</u>, 556 F.3d at 322. Here, Defendants made no statements and thus, seek dismissal, not suppression of evidence, as a remedy.

The Court can find only one case in the Ninth Circuit where an indictment was dismissed solely on the basis of a Rule 5 violation. In <u>United States v. Osunde</u>, 638 F. Supp. 171 (N.D. Cal. 1986), the court dismissed an indictment after determining that a 106-day delay was unnecessary and violated Rule 5. The delay in this case pales in comparison to the delay in <u>Osunde</u>. Here, dismissal would be wholly inappropriate because the delay was only three days, not 106. See also <u>Minero-Rojas</u>, 2011 WL 5295220, at *8 (noting that suppression of evidence is the appropriate remedy for a rule 5 violation); <u>United States v. Savchenko</u>, 201 F.R.D. 503, 509 (S.D. Cal. 2001) (noting that Rule 5 is "designed to deal with a particular problem by applying an evidentiary sanction," and that the Due Process Clause is more appropriate to address dismissal). Because the delay here was only three days, dismissal is inappropriate solely on the ground of a Rule 5 violation.

**B.   Due Process**

Defendants argue that the conditions they experienced while in confinement at the SYPOE amounted to punishment prior to adjudication of guilt or innocence, thereby violating the Due Process Clause of the Fifth Amendment. An indictment may be dismissed as a violation of a defendant's due process rights if the Government's conduct is so "grossly shocking and so outrageous as to violate the universal sense of justice." <u>United States v. Holler</u>, 411 F.3d 1061, 1066 (9th Cir. 2005) (citing <u>United States v. Montoya</u>, 45 F.3d 1286, 1300 (9th Cir. 1995)). The conduct must be "excessive, flagrant, scandalous, intolerable, and offensive . . . ." <u>Holler</u>, 411 F.3d at 1066 (citing <u>United States v. Edmonds</u>, 103 F.3d 822 (9th Cir. 1996)).

While the conditions at the SYPOE are not ideal, they do not amount to outrageous governmental conduct in violation of the Defendants due process rights. The SYPOE provides detainees with three meals, a sleeping pad, and a blanket. Although the lights remain on at night, and although the toilets include

only slight partitions, these procedures are intended for the detainees' safety. Defendants recognize that certain discomforts are necessarily a part of being detained. (See Defs.' Mot. 12, ECF No. 30.) Any inadequacies in the conditions at the SYPOE do not amount to "grossly shocking" governmental conduct sufficient to warrant a dismissal of the indictment.

**C.   Supervisory Powers**

Finally, Defendants argue that the Court should dismiss the indictment as an exercise of its supervisory powers because dismissal would remedy both the delay in this case and possible delays in the future. A district court may dismiss an indictment under its supervisory powers "only when the defendant suffers substantial prejudice, and where no lesser remedial action is available." Minero-Rojas, 2011 WL 5925220, at *9 (citing United States v. Chapman, 524 F.3d 1073, 1087 (9th Cir. 2008)).

Defendants argue that dismissal would help deter future delay, but fail to argue that their case was prejudiced in any way by the delay. While it may deter future action, the delay did not have an impact on this case. Because they have not shown that the delay prejudiced their case, dismissal is improper under the Court's supervisory powers.

For the reasons discussed above, Defendants motion to dismiss the indictment is **DENIED**. However, the persistent delays nonetheless require a remedy.

**IV.**

District courts have the "inherent power to control their dockets." United States v. W.R. Grace, 526 F.3d 499, 509 (9th Cir. 2008) (quoting Atchison, Topeka & Santa Fe Ry. Co. v. Hercules, Inc., 146 F.3d 1071, 1074 (9th Cir. 1998)). This "well established principle" gives federal courts the ability to "manage their cases and courtrooms effectively and to ensure obedience of their

orders." W.R. Grace, 526 F.3d at 509 (quoting Aloe Vera of Am., Inc. v. United States, 376 F.3d 960, 964-64 (9th Cir. 2004)). A district court also has statutory power under the All Writs Act to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). As noted above, dismissal of an indictment is only proper "where no lesser remedial action is available." Minero-Rojas, 2011 WL 5925220, at *9.

In Pimental, the Ninth Circuit instructed our district court that where defendants are arrested at the SYPOE by 10:00 a.m. it is usually unreasonable to not have them presented before the Magistrate Judge that afternoon:

> Even if it was valid to delay presentment to interrogate [the defendant] . . . the failure to present [the defendant] to the magistrate judge on Friday Afternoon was still unreasonable because there was ample time between 10:00 a.m. and the conclusion of the magistrate judge's calendar to conduct the interviews, prepare a complaint, and transport [the defendant] to the courthouse seventeen miles away. [The arresting agent] knew there was a three-day weekend looming, and knew that if [the defendant] was not presented to a magistrate judge on Friday, he would be imprisoned without the benefit of a court appointed attorney from Friday morning until Tuesday. [The arresting agent] <u>was required to promptly take all necessary steps to ensure that [the defendant] was presented on Friday afternoon</u>, absent a valid reason for delay.

Pimental, 755 F.3d at 1103 (emphasis added).

A material cause of delay is the inability to bring the defendants booked into the MCC at 12:30 p.m. before the Magistrate Judge prior to the conclusion of the afternoon calendar. The duty Magistrate Judge is available until 5:00 p.m. No reasons have been offered as to why the 12:30 p.m. window cannot be moved up or why the process cannot be slightly expedited in compliance with General Order 605 to bring the defendants before the Magistrate Judge before the end of the afternoon calendar. The Government must take reasonable steps to accomplish this.

Therefore, to remedy the problem of unnecessary and unreasonable delays in this district, the Court **ORDERS** the following:

(1) By 9:00 a.m. each day, the Government shall provide a list to the duty Magistrate Judge and Federal Defender of all persons arrested before 6:00 a.m. that day, but who will not be arraigned that day. The Government shall also provide the reasons for the delay and the location of the defendants;

(2) The Government shall examine ways to eliminate delays in presentment. Its representatives shall meet with the Presiding Magistrate Judge and a representative from Federal Defenders to consider ways to reduce the delays, consistent with General Order 605, including arranging to have defendants booked at the present 12:30 p.m. window presented before the Magistrate Judge that same afternoon.[3] The Government shall file its remedial proposal with comments from the Presiding Magistrate Judge and Federal Defenders' representative on or before **June 10, 2016**. The Court will hold a hearing on the proposal on **June 17, 2016, at 2:30 p.m. in Courtroom 15B**.

//
//
//

---

[3] The Court's decision should not be read to suggest that the tuberculosis screening procedures are unnecessary or should be abandoned. On the contrary, the Court believes that the health and safety of all individuals involved presents a valid reason for requiring chest x-rays. However, given the current procedures, chest x-rays taken of individuals presented at the 12:30 p.m. booking window are typically not read until the following day. The Court concludes that this delay is unnecessary and unreasonable.

The Court appreciates the seriousness with which the Government has addressed this issue. However, absent a valid reason, the Government is required to take all necessary steps to ensure that defendants are promptly presented before a Magistrate Judge. See <u>Pimental</u>, 755 F.3d at 1103.

**IT IS SO ORDERED.**

Dated: April 18, 2016

<span style="margin-left: 4em;">*[signature]*<br>
Barry Ted Moskowitz, Chief Judge<br>
United States District Court</span>

13

15cr1932 BTM